UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADRIAN GOODALL,

    Plaintiff,

  v.

DHL EXPRESS (USA), INC.,

    Defendant.

Case No. 25-cv-04548-TSH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 23

## I. INTRODUCTION

Plaintiff Adrian Goodall filed suit against Defendant DHL Express (USA), Inc. ("DHL") for claims arising out of Goodall's employment with DHL. ECF No. 1-5. Pending before the Court is DHL's Motion for Summary Judgment. ECF Nos. 23 (Notice), 23-1 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the July 2, 2026, hearing. For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II. BACKGROUND

**A. Factual Background**

DHL, an Ohio corporation with its principal place of business in Florida, provides courier

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 11, 16.

delivery services.  Compl. ¶¶ 2, 12 (ECF No. 1-5); Not. of Removal ¶ 16 (ECF No. 1); Mot. at 8:10–18.  Goodall, a California resident, was employed with DHL at all relevant times to this action.  Compl. ¶¶ 1–2, 10; Mot. at 8:10–11:4.  Goodall began working for DHL in 2018, suffered a shoulder injury in 2020 while working, and was placed on a leave of absence in 2024.  Compl. ¶ 12; Mot. at 8:19–27, 10:12–17; Opp. at 4:14–18 (ECF No. 25).  DHL has not terminated Goodall, and he remains on a leave of absence.  DHL's Separate Statement of Facts ("Def.'s SSF") ¶ 31 (ECF No. 24-1).[2]

Overall, Goodall alleges that DHL (1) discriminated against him and harassed him based on his disability; (2) retaliated against him for requesting disability accommodations and seeking the interactive process; and (3) violated his rights relating to disability accommodations.  Compl. ¶¶ 14–16, 20, 31, 64.

### 1.    The Parties' Employment Relationship Between 2018–2021

DHL hired Goodall as a Courier at its Oakland, California location in November 2018.  Mot. at 8:11–13; Opp. at 2:3–4.  In this position, Goodall's duties included "picking up packages, bringing packages back to the station, delivering packages, and sorting packages for delivery in a timely manner."  Def.'s SSF ¶ 2.  Goodall had no performance issues while employed by DHL.  Goodall's Separate Statement of Facts ("Pl.'s SSF") ¶ 9 (ECF No. 27); DHL's Reply Statement of Facts ("Def.'s RSF") ¶ 9 (ECF No. 29); *see also* Def.'s RSF ¶ 30 ("[Goodall] was never written up during his employment at DHL.").

The parties dispute whether certain lifting abilities are essential functions of Goodall's Courier position.  DHL states that the ability "to lift up to 70 pounds occasionally" and the ability "to lift 40 pounds frequently" are essential functions of the Courier position.  Mot. at 8:11–18.

---

[2] As a threshold issue, DHL requests the Court "accept as true each and every single one of DHL's Undisputed Material Facts" because Goodall does not respond to these facts "at all."  Reply at 2:1–10.  Goodall filed a Separate Statement of Facts that does not comply with the Court's Case Management Order (ECF No. 18) as the SSF does not include a corresponding paragraph for every paragraph in DHL's SSF.  *See* ECF No. 18 (stating requirements for opposing party's separate statement of facts); *see generally* Goodall's Separate Statement of Facts (ECF No. 27).  However, it is clear from Goodall's SSF that he addresses what he considers are factual disputes.  The Court will not ignore his evidence for presenting it in a manner that does not exactly follow the Court's Order.  Therefore, the Court will treat as undisputed any factual contentions made by DHL that are not disputed by Goodall with cited record evidence.  *See* Fed. R. Civ. P. 56(e)(2).

United States District Court
Northern District of California

The Courier Job Posting contains a section, "Physical Requirements," that states "must be able to lift up to seventy (70) lbs occasionally," "must be able to lift forty (40) lbs frequently," and "must be able to . . . reach overhead." Declaration of Kelly Aguilar ("Aguilar Decl.") ¶ 6 (ECF No. 23-2), Ex. D ("Courier Job Posting") (ECF No. 24-6). The Job Posting further states: "We will ensure that individuals with disabilities are provided reasonable accommodations . . . to perform essential job functions[.]" *Id.* at Ex. D. At his deposition, Goodall acknowledged that the Job Posting lists physical requirements related to lifting and reaching overhead. Declaration of Arthur L. Ramirez ("Ramirez Decl.") ¶ 3 (ECF No. 23-3), Ex. B ("Goodall Dep. Tr.") at 50:10–23 (ECF No. 24-4). He further testified that most of the Courier job is driving. Goodall Dep. Tr. at 37:1–23. Goodall avers that "lifting 40–70 pound objects was a small portion of the lifting" he did as part of the job, and that the "majority of the packages [he] delivered were less than 15 pounds." Declaration of Adrian Goodall ("Goodall Decl.") ¶ 12 (ECF No. 25-1).

On November 9, 2020, Goodall injured his left shoulder during a delivery while moving a large package that was at least twenty pounds. Def.'s SSF ¶ 4; Opp. at 2:4–5. That day, Goodall reported the injury to his supervisor but did not receive a response; Goodall did not file a workers' compensation claim at that time. Goodall Decl. ¶ 3. Goodall continued to work full duties for about thirty days but then filed a workers' compensation claim in December 2020 due to "a significant increase in pain in [his] left shoulder." *Id.* ¶ 4.

In December 2020, DHL placed Goodall on light duty work to accommodate him after his doctor issued lifting restrictions for him. Def.'s SSF ¶ 5. This temporary work assignment, consisting of lifting small packages and sorting, lasted a few shifts. *Id.* ¶¶ 6–7. After this modified assignment ceased, DHL permitted Goodall to sit in the break room or his car for the full eight-hour shift; Goodall received the same pay and number of shifts per week during this time which lasted a couple of months. *Id.* ¶¶ 8–10; Opp. at 2:14–15. Goodall testified that DHL placed him on light duty because of work restrictions related to lifting, so that he could still be employed even though he could not do his normal delivery route. Goodall Dep. Tr. at 62:5–66:15.

Goodall avers that during the time he was on light duty, his manager, Frank Guttierrez, told him "that it was DHL's policy that injured workers were required to be released to full duties

3

to return to work." Goodall Decl. ¶ 4; *see also* Goodall Dep. Tr. at 65:4–16 ("I can't remember who was the bearer of bad news, but I was told DHL didn't offer modified or light duty."). Goodall further avers that later that year, his union representative, John Sangiacomo, told him that "it was DHL's position with respect to injured employees that they were required to be released to full duties in order to return to work for DHL." Goodall Decl. ¶ 5.

Goodall took baby bonding leave from March 2021 to May 2021. Def.'s SSF ¶ 11. Goodall believes that when he returned from this leave, he was placed back on light duty work and was permitted to sit in his car when no work was available. *Id.* ¶ 12.

In July 2021, Goodall requested a medical leave of absence which DHL granted. *Id.* ¶ 13. In October 2021, while on leave, Goodall had surgery on his left shoulder. *Id.* ¶ 14; Opp. at 2:22–23; Goodall Decl. ¶ 6. After surgery, Goodall's treating physician, Dr. Alex Sable-Smith, deemed Goodall totally temporarily disabled until November 2023. Goodall Decl. ¶ 6.

### 2.   The Parties' Employment Relationship Between 2022–2025

Goodall avers that in early 2023, Manuel Lanto (a DHL employee who handles payroll), told Goodall that "it was DHL's policy that unless [Goodall] was released to full duties, [he] would not be able to return to work at DHL, and would more than likely be let go and offered some form of compensation." Goodall Decl. ¶ 7.

On November 29, 2023, Dr. Sable-Smith completed a Visit Note for Goodall for "status post left shoulder arthroscopy and rotator cuff repair." Aguilar Decl. ¶ 5, Ex. C at 3 ("Nov. 2023 Visit Note") (ECF No. 24-5). The Visit Note states that Goodall is "permanent and stationary" and has "permanent work restrictions." Nov. 2023 Visit Note at 10. The Visit Note further states:

> The patient cannot return to work in their usual and customary capacity. They may return to work with the following restrictions.
> . . .
>
> Mr. Goodall is able to lift and carry up to 15 lbs. on an occasional basis. He is able to reach at waist level with his left upper extremity on an occasional basis. He is able to perform repetitive hand tasks with his left on an occasional basis. He is able to grip and grasp on a frequent basis.

*Id.* DHL never attempted to clarify this Visit Note. Pl.'s SSF ¶ 34; Def.'s RSF ¶ 34. Goodall avers that he only injured his left arm, that the fifteen pound lifting restriction always applied only

to his left arm, and that Dr. Sable-Smith told him that the work restrictions were for the left arm only. Goodall Decl. ¶¶ 6, 10–11.

In December 2023, the Qualified Medical Evaluator (QME), Dr. Scott Taylor, determined that Goodall was permanent and stationary with respect to his left shoulder injury. Goodall Decl. ¶ 7. In January 2024, Goodall received a phone call from DHL's Human Resources Manager, Kelly Aguilar, indicating that she received the QME report; Aguilar asked Goodall a few questions and told him to contact Sedgwick, DHL's third-party administrator regarding return to work issues. Pl.'s SSF ¶ 1; Def.'s RSF ¶ 1. On January 22, 2024, Aguilar sent Goodall an email mentioning the interactive process and instructing him to contact Sedgwick to navigate a path back to work. Def.'s SSF ¶ 16.

Sedgwick informed Goodall that he needed to apply for leave under the Family and Medical Leave Act (FMLA) and that Sedgwick would not be handling Goodall's accommodation request. Pl.'s SSF ¶ 2; Def.'s RSF ¶ 2. On January 30, 2024, Sedgwick sent Goodall a letter stating, "this request for an accommodation will be closed because Not eligible: Inappropriate request." Goodall Decl. ¶ 9, Ex. 2 ("Sedgwick Letter") (ECF No. 25-3). Goodall testified that when he contacted Sedgwick, he did not specify the accommodation he needed. Goodall Dep. Tr. at 112:4–17. Goodall informed Aguilar by email of the issues he was having with Sedgwick. Pl.'s SSF ¶ 3; Def.'s RSF ¶ 3.

Aguilar avers that she reviewed the physical requirements of the Courier position and Goodall's permanent work restrictions; she considered whether Goodall could perform the requirements with or without accommodations by evaluating possible accommodations; and determined that Goodall's restrictions prevented him "from performing the core physical duties of the Courier role." Aguilar Decl. ¶ 7. Aguilar "considered alternative positions, including a part-time sorter position" which "requires lifting up to 70 pounds occasionally, lifting up to 40 pounds frequently, and reaching overhead repeatedly." Id. ¶¶ 8–9; see id., Ex. E ("Part-Time Sorter Job Posting") (ECF No. 24-7).

On March 24, 2024, Aguilar emailed Goodall regarding his accommodation request. Aguilar Decl. ¶ 12, Ex. F at 4 (ECF No. 24-8). This email states:

> You have permanent work restrictions as follows:
>
> Able to lift and carry up to 15lbs on an occasional basis.
> Able to reach and waist level on an occasional basis.
> Able to perform repetitive hand tasks with left on an occasional basis.
> Able to grip and grasp on a frequent basis.
>
> Based on these restrictions we are not able to reasonably accommodate at this time. The physical requirements for a courier position and part time sorter position are detailed below.
>
> Physical Requirements:
> - Must be able to lift up to seventy (70) lbs occasionally
> - Must be able to lift forty (40) lbs frequently
> - Must be able to walk, climb stairs, reach overhead, squat, bend, kneel, stoop and crouch repeatedly
>
> In accordance with Article 27 of the collective bargaining agreement, you will remain on a leave of absence.

*Id.* at Ex. F. On March 28, 2024, Aguilar emailed Goodall and told him to apply for other positions within DHL if Goodall felt he had the qualifications for other positions. *Id.*

On April 2, 2024, Goodall inquired about two other positions: the pickup route and cleanup route positions. Def.'s SSF ¶ 22; *see* Aguilar Decl. ¶¶ 13–17, Ex. G (ECF No. 24-9). These positions "both require drivers who can pick up packages weighing up to 40 pounds on a frequent basis." Def.'s SSF ¶ 23; *see* Aguilar Decl. ¶ 18, Ex. H (Email) (ECF No. 24-10) ("We do not have weight thresholds for specific routes so essentially every route needs to have the ability to deliver and pick up 40 lbs packages on a frequent basis."). DHL invited Goodall to review open positions within DHL to determine if he was qualified for any open positions. Def.'s SSF ¶ 27. Goodall avers that DHL did not reach out to him after this. Goodall Decl. ¶ 13.

On May 22, 2024, Dr. Sable-Smith submitted a Work Status Report stating:

> **Permanent and Stationary:** Permanent work restrictions: Mr. Goodall is able to lift and carry up to 15 lbs . on an occasional basis with the left arm. He is able to reach at waist level with his left upper extremity on an occasional basis. He is able to perform repetitive hand tasks with his left on an occasional basis. He is able to grip and grasp on a frequent basis (updated 5/22/24 to clarify the lift and carry limitation is of the left upper extremity).

Goodall Decl. ¶ 6, Ex. 1 ("May 2024 Work Status Report") (ECF No. 25-2) (bold emphasis in original).

On June 25, 2025, Dr. Sable-Smith completed a Visit Note for Goodall for a follow-up

United States District Court
Northern District of California

appointment. Ramirez Decl. ¶ 6, Ex. J ("June 2025 Visit Note") (ECF No. 24-12). The Visit Note states that Goodall is "permanent and stationary" and has "permanent work restrictions." June 2025 Visit Note at 9. The Visit Note further states the same restrictions as in the May 2024 Work Status Report, restricted to the left arm. *Id.*

Goodall avers that while working as a Courier, he was able to deliver packages "using [his] right arm/hand while carrying the scanner in [his] left hand." Goodall Decl. ¶ 12. Goodall testified that he believes he can lift seventy pounds with his right arm only; most items he delivered as a Courier could be picked up and moved with one hand; and he could move heavy packages using one arm and a dolly for leverage. Declaration of Elaine Deane ¶ 3 (ECF No. 25-5), Ex. 1 ("Sec. Goodall Dep. Tr.") at 210:11–15, 266:4–268:8 (ECF No. 25-6). He acknowledged that a medical provider has not advised him that he can or cannot lift seventy pounds with his right arm, and that he doesn't "know for a fact" that he could use a dolly with one hand to move a heavy package. Sec. Goodall Dep. Tr. at 211:19–25, 267:25–268:11.

Goodall states that DHL did not offer him any accommodation and that DHL did not discuss possible tools with him that could get him back to work. *Id.* at 268:12–270:20; Goodall Decl. ¶ 13. Goodall further states that he performed online research regarding accommodations that may have been available and found information on carts, wearable devices, load lifters, and dollies. Goodall Decl. ¶ 15, Ex. 3 (ECF No. 25-4). He does not recall any DHL employee making negative or inappropriate comments to him about his injury. Goodall Dep. Tr. at 169:11–22.

After Goodall was placed on leave, he went to work for Thatcher Chemical because he no longer received a paycheck from DHL and needed other employment to pay his bills. Goodall Decl. ¶ 14; Sec. Goodall Dep. Tr. at 218:10–22. Goodall remains on a leave of absence with DHL and has not applied to any positions with DHL. Def.'s SSF ¶ 28. No one at DHL has told Goodall that he has been terminated, and Goodall never resigned from DHL. *Id.* ¶¶ 31–32; Goodall Dep. Tr. at 54:20–55:1.

### B.    Procedural Background

On March 24, 2025, Goodall filed this action in the Alameda County Superior Court (Case No. 25CV116362) against DHL and Does 1–50. Not. of Removal (ECF No. 1), Ex. 1 ("Compl.")

7

(ECF No. 1-5).  Goodall alleges eight causes of action under California law:  (1) Disability Discrimination under the Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code §§ 12940 *et seq.*); (2) Disability Harassment under FEHA; (3) Failure to Provide Reasonable Accommodation under FEHA; (4) Failure to Engage in Interactive Process under FEHA; (5) Retaliation under FEHA; (6) Failure to Prevent and Remedy Discrimination, Harassment, and Retaliation under FEHA; (7) Whistleblower Retaliation (Cal. Lab. Code § 1102.5); and (8) Constructive Wrongful Termination in Violation of Public Policy.  Compl. ¶¶ 17–93.  Goodall seeks, *inter alia*, compensatory damages, punitive damages, and injunctive relief.  *Id.* at 21–22.

On May 19, 2025, DHL filed an Answer to the Complaint in the Alameda County Superior Court.  Not. of Removal, Ex. 4 (Answer) (ECF No. 1-8).  DHL removed the action to this Court on May 29, 2025.  ECF No. 1.  DHL alleges the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Not. of Removal ¶¶ 14–27.

On May 28, 2026, DHL filed the instant Motion for Summary Judgment.  ECF Nos. 23 (Notice), 23-1 ("Mot.").  On June 11, 2026, Goodall filed an Opposition.  ECF No. 25 ("Opp.").  On June 24, 2026, DHL filed a Reply.  ECF No. 28 ("Reply").

### III.    LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the

United States District Court
Northern District of California

United States District Court
Northern District of California

task of the Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Cafasso, U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations") (cleaned up). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (cleaned up).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")). If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (cleaned up).

## IV.   DISCUSSION

DHL moves for summary judgment on each of Goodall's substantive claims, as well as his claim for punitive damages, asserting that his claims fail because there is no triable issue of material fact as to any of Goodall's claims. Mot. at 7–8. Goodall contends that summary judgment is improper because factual disputes exist for each of his claims. Opp. at 6:1–8:14.

In sum, the Court concludes that there are genuine disputes of material fact regarding Goodall's Disability Discrimination, Disability Harassment, Failure to Provide Reasonable Accommodation, Failure to Engage in Interactive Process, FEHA Retaliation, Failure to Prevent

9

and Remedy, and Whistleblower Retaliation claims.  Therefore, summary judgment for DHL on these claims is not warranted.  However, the Court concludes that Goodall fails to adduce evidence of required elements for his Constructive Wrongful Termination claim and claim for punitive damages.  Therefore, summary judgment for DHL on these claims is warranted.

### A.    Evidentiary Issues

With its Reply, DHL filed a separate document titled, "Objections to Declaration of Adrian Goodall."  ECF No. 28-1.  DHL also lists objections throughout its Reply Statement of Facts.  *See generally* Def.'s RSF.

Regarding motion practice, the Civil Local Rules state:

> Any reply to an opposition may include affidavits or declarations, as well as a supplemental brief or memorandum under Civil L.R. 7-4. Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum.  Pursuant to Civil L.R. 7-4(b), the reply brief or memorandum may not exceed 15 pages of text.

Civ. L.R. 7-3(c).

Here, DHL's evidentiary objections to Goodall's Opposition are contained in separate documents, not in DHL's Reply as required by the Local Rules.  Accordingly, the Court **STRIKES** DHL's evidentiary objections that are not stated within its Reply.  *Cf. Motu Novu, LLC v. Percival*, No. C-16-06545-SBA, 2018 WL 3069316, at *2 (N.D. Cal. May 7, 2018) (striking separate objections to declarations in plaintiff's opposition where objections were not included within defendant's reply brief).

### B.    Disability Discrimination Claim (Claim 1)

Goodall alleges that DHL discriminated against him based on his physical impairment.  Compl. ¶¶ 17–27.  DHL argues that summary judgment in its favor is appropriate on Goodall's Disability Discrimination claim because Goodall cannot establish the *prima facie* elements of his discrimination claim and cannot establish pretext.  Mot. at 12:4–17:19.

Under FEHA, an employee's physical disability, mental disability, and medical condition are all protected characteristics.  Cal. Gov't Code § 12940(a).  It is unlawful for an employer, because of an employee's protected characteristic, "to discharge the person from employment or

United States District Court
Northern District of California

10

from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." *Id.* "FEHA's discrimination provision addresses only *explicit* changes in the 'terms, conditions, or privileges of employment'; that is, changes involving some *official action taken by the employer.*" *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) (internal citation omitted) (emphasis in original).

California has adopted the three-stage *McDonnell Douglas* burden-shifting test for trying claims of discrimination based on a theory of disparate treatment. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a *prima facie* case, the plaintiff generally "must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355. The burden then "shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355–56 (cleaned up). If the employer sustains this burden, the "plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 356.

### 1.    *Prima Facie* Case Of Discrimination

DHL argues that Goodall cannot establish a *prima facie* case of discrimination because Goodall (1) "cannot prove that he suffered an adverse employment action"; (2) cannot perform "the essential functions of the job with or without a reasonable accommodation"; and (3) "cannot establish a causal connection between his disability and any alleged adverse employment action." Mot. at 12:4–15:27.

To establish a *prima facie* case of disability discrimination under FEHA, a plaintiff must present evidence that "demonstrates, even circumstantially or by inference, that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an

11

United States District Court
Northern District of California

adverse employment action because of the disability or perceived disability."  *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010).  "The *prima facie* burden is light; the evidence necessary to sustain the burden is minimal."  *Id.*

Here, DHL does not dispute that Goodall has a disability protected under FEHA.  *See* Mot. at 18:13 ("DHL does not dispute that [Goodall] suffered from a disability.").  DHL argues that Goodall cannot meet the other two elements of his *prima facie* discrimination claim.  Mot. at 12:4–15:27.  The Court addresses each element below.

### a.      Essential Functions Of Job

DHL argues that Goodall is not a qualified individual capable of performing essential job functions because he "was unable to meet the lifting requirements of the Courier position, and there were no other delivery driver positions available that could accommodate [his] lifting restrictions."  Mot. at 13:1–15:8.  Goodall contends that factual disputes exist regarding whether (1) the lifting restrictions are essential functions of the Courier position; (2) the lifting restrictions are illegal under FEHA because they "must be performed without accommodation"; and (3) Goodall can perform the lifting restrictions.  Opp. at 10:22–13:3.

On a FEHA discrimination claim, the employee plaintiff bears the burden of showing that they "can perform the essential functions of the job with or without reasonable accommodation."  *Green v. State of California*, 42 Cal. 4th 254, 260 (2007).  FEHA defines "essential functions" as the "fundamental job duties of the employment position the individual with a disability holds or desires."  Cal. Gov't Code § 12926(f).  "'Essential functions' does not include the marginal functions of the position."  *Id.*  "'Marginal functions' of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way."  2 Cal. Code Regs. § 11065(e)(3).

A job function may be considered essential if, *inter alia*, (1) "the reason the position exists is to perform that function"; (2) there are a "limited number of employees available among whom the performance of that job function can be distributed"; or (3) "the incumbent in the position is hired for his or her expertise or ability to perform the particular highly specialized function."

12

*Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015) (citing Cal. Gov't Code § 12926(f)(1); 2 Cal. Code Regs. § 11065(e)(1)) (cleaned up).

"Evidence of 'essential functions' may include the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring employees to perform the function, the terms of a collective bargaining agreement, the work experiences of past incumbents in the job, and the current work experience of incumbents in similar jobs." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 717–18 (2017) (citing Cal. Gov't Code § 12926(f)(2)). No one factor is dispositive. *Lui v. City & Cnty. of San Francisco*, 211 Cal. App. 4th 962, 977 (2012). "The identification of essential job functions is a highly fact-specific inquiry." *Id.* at 971 (cleaned up). Whether a duty of a position is an essential function is a question of fact. *Nealy*, 234 Cal. App. 4th at 373.

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that specific lifting requirements are not essential functions of Goodall's Courier position. DHL asserts Goodall could not perform two essential functions that are part of the Courier position "as well as other alternative positions considered": lifting seventy pounds occasionally and lifting forty pounds frequently. Mot. at 8:11–18, 14:6–15:8. It is undisputed that DHL's Courier Job Posting contains a section, "Physical Requirements," that states "must be able to lift up to seventy (70) lbs occasionally," and "must be able to lift forty (40) lbs frequently." Aguilar Decl., Ex. D. While this is relevant to the inquiry "an employer may not turn every condition of employment which it elects to adopt into an essential job function, merely by including it in a job description." *Lui*, 211 Cal. App. 4th at 978. DHL's assertion that Goodall "conceded in deposition" that lifting requirements are "essential requirements of the position" does not move the needle. Reply at 4:16–26. Although Goodall acknowledged that the Courier Job Posting lists physical requirements related to lifting and reaching overhead, he did not make a legal determination as to whether those duties were essential functions. Goodall Dep. Tr. at 50:10–23.

Goodall's proffered evidence on the amount of time spent on various duties while working as a Courier, the frequency of heavy packages, and the experience of incumbents supports his

United States District Court
Northern District of California

13

United States District Court
Northern District of California

argument that lifting forty pounds frequently and lifting seventy pounds occasionally are not essential functions. Opp. at 5:6–11, 12:15–28. Goodall states that most of the Courier job is driving, that "lifting 40–70 pound objects was a small portion of the lifting" he did as part of the job, and that the "majority of the packages [he] delivered were less than 15 pounds." Goodall Dep. Tr. at 37:1–23; Goodall Decl. ¶ 12. DHL contends that Goodall's "belief that heavy packages were infrequent" cannot "eliminate the requirement that Couriers be able to lift them when they do, in fact, occur." Reply at 7:2–4. It is true that a function need not encompass the majority of an employee's time to be essential. *Lui*, 211 Cal. App. 4th at 978. However, the amount of time spent on the job performing the function is a relevant factor. *Atkins*, 8 Cal. App. 5th at 717–18. Goodall further testified that DHL placed him on light duty because of work restrictions related to lifting, so that he could still be employed even though he could not do his normal delivery route. Goodall Dep. Tr. at 62:5–66:15. And DHL states it placed Goodall on light duty work, consisting of lifting small packages and sorting, due to his lifting restrictions. Def.'s SSF ¶¶ 5–7. This provides evidence that incumbents were not required to lift heavy packages. Overall, because a jury could conclude that lifting forty pounds frequently and lifting seventy pounds occasionally are not essential functions of Goodall's Courier position, the Court cannot decide the issue on summary judgment. *See Hastings v. Dep't of Corr.*, 110 Cal. App. 4th 963, 967 n.6 (2003) (explaining that only in the absence of other evidence, may a court "properly rely on the employer's judgment and the written job description to determine the essential job functions" on summary judgment).

Moreover, even if lifting restrictions are essential functions of Goodall's position, the Court agrees with Goodall that a factual dispute exists regarding whether Goodall can perform those functions.[3] Opp. at 11:18–12:14. At the outset, the Courier Job Posting does not specify that an employee must meet the lifting requirements with each arm. *Id.* at 11:23–24; *see* Courier

_____

[3] DHL leans heavily on *Tomasello v. Delta Air Lines, Inc.* for its proposition that Goodall is not a qualified individual capable of performing essential job functions. Mot. at 13:11–14:23 (citing 8 F. Supp. 2d 1090 (N.D. Ill. 1998)); Reply at 5:11–7:17. But in *Tomasello*, there was no dispute that typing was an essential function of the plaintiff's position. *Id.* at 1091. *Tomasello* is thus inapposite to the case here.

14

Job Posting (stating "must be able to lift").  Goodall states that prior to his injury, he was able to deliver packages as a Courier using his right arm while carrying the scanner in his left hand. Goodall Decl. ¶ 12.  Goodall testified that he believes he can lift seventy pounds with his right arm only; most items he delivered as a Courier could be picked up and moved with one hand; and he could move heavy packages using one arm and a dolly for leverage.  Sec. Goodall Dep. Tr. at 210:11–15, 266:4–268:8.  Further, Goodall states that he performed online research regarding accommodations that may have been available and found information on carts, wearable devices, load lifters, and dollies.  Goodall Decl. ¶ 15, Ex. 3.  Overall, Goodall proffers evidence that he can perform the lifting restrictions with or without accommodations.  DHL's arguments to the contrary are unpersuasive.  DHL asserts that Goodall's testimony contradicts "the certifications of his doctor."  Reply at 6:20–7:17.  Not so.  It is undisputed that no medical provider has told Goodall that he *cannot* meet the lifting requirements by using only his right arm.  Sec. Goodall Dep. Tr. at 211:19–25, 267:25–268:11.  And while the Nov. 2023 Visit Note states Goodall "is able to lift and carry up to 15 lbs. on an occasional basis," a reasonable inference exists that this restriction applies only to Goodall's left arm as the other restrictions in that note apply only to his left arm. Opp. at 11:23–12:14; *see* Nov. 2023 Visit Note (listing reaching and repetitive hand task restrictions for left arm).  Indeed, two subsequent doctor notes confirm that the lifting restrictions only apply to Goodall's left arm.  *See* May 2024 Work Status Report; June 2025 Visit Note.  Next, DHL complains that Goodall's testimony is speculative because he "has not tried to" lift heavy packages with his right arm "and has not received medical clearance to do so."  Reply at 6:20– 7:17.  But that is not the standard.  Goodall marshals evidence that could permit a reasonable jury to find that Goodall can perform the lifting requirements; this is all that is required to survive summary judgment.  *Anderson*, 477 U.S. at 250.  Therefore, because factual disputes exist regarding what duties are essential functions and whether Goodall could perform the essential functions of his position, summary judgment for DHL is not warranted.

### b.    Adverse Employment Action Because Of Disability

DHL argues that "the undisputed evidence establishes that [Goodall] has not suffered an adverse employment action," and that there is no evidence showing a causal connection between

Goodall's disability and any purported adverse employment action. Mot. at 12:14–26, 15:9–27. Goodall contends that a factual dispute exists "regarding whether placing [him] on a forced indefinite leave of absence is an adverse action" under FEHA, and that Goodall's disability was "the only reason for [DHL's] action." Opp. at 9:18–10:21, 13:5–17.

The FEHA discrimination provisions protect employees against adverse action in the form of "compensation or in the terms, conditions, and privileges of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1053 (2005). Under the California Supreme Court's "materiality" test, adverse actions include "so-called 'ultimate employment actions' such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Id.* at 1053–54. "[I]n determining whether an employee has been subjected to treatment that materially affects the terms and conditions of employment, it is appropriate to consider the totality of the circumstances[.]" *Id.* at 1036.

To establish a causal link between an adverse action and a protected characteristic in mixed motive cases, a plaintiff must "show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor" for the employer's action. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (emphasis in original).

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that Goodall suffered an adverse employment action because of his disability. DHL argues that Goodall did not suffer any adverse employment action because DHL has not written Goodall up or terminated him, and Goodall has not resigned. Mot. at 12:14–26. But the law is not so limited. The reduction of an employee's hours alone can constitute a material and adverse employment action by an employer. *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 93 (2017). And the act of placing an employee on involuntary administrative leave can constitute an adverse employment action. *Whitehall v. Cnty. of San Bernardino*, 17 Cal. App. 5th 352, 367 (2017). There is no dispute that DHL placed Goodall on a medical leave in 2021 after Goodall requested the leave, and that DHL told Goodall in March 2024 that he would "remain on a leave of absence." Def.'s SSF ¶ 13; Aguilar Decl., Ex. F. Goodall states that after

trying to return to his Courier position in 2023, DHL did not discuss possible tools with him that could get him back to work but instead placed him on leave; he did not receive wages from DHL while on leave; he had to obtain other employment to pay his bills after being placed on leave; DHL did not contact him after communicating that Goodall would remain on leave; and there is no time limit for his leave. Goodall Decl. ¶¶ 13–14; Sec. Goodall Dep. Tr. at 218:10–22, 268:12–270:20. In sum, the Court agrees with Goodall that an involuntary unpaid leave of absence of an undefined duration could qualify as an adverse employment action. Opp. at 9:18–10:21.

Regarding causation, DHL argues that it placed Goodall "on an inactive leave" not because of his disability but because he could not perform the essential functions of "the Courier position or any other delivery driver positions"—namely, that he could not meet certain lifting requirements. Mot. at 15:9–27; Reply at 3:20–4:13, 7:18–8:9. According to DHL, Goodall's "leave was the consequence of the absence of an available reasonable accommodation or vacant position within [Goodall's] permanent restrictions—not a refusal to accommodate an employee who could perform the job." Reply at 4:2–13. But that puts the cart before the horse. Reassignment is only a reasonable accommodation where the employee cannot be accommodated in their current position. *Atkins*, 8 Cal. App. 5th at 721. And a leave of absence is only a reasonable accommodation where reassignment is not feasible. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263–64 (2000). In short, DHL's argument rises and falls with its argument that Goodall could not perform the essential functions of his position or of any alternative position. If lifting requirements are not essential job functions of the Courier position, then other vacant positions and leave were unnecessary, and a reasonable jury could find that DHL placed Goodall on leave because of his disability. Therefore, the Court finds that Goodall establishes a *prima facie* case of discrimination under FEHA.

### 2. Pretext

DHL asserts that its actions are based on a legitimate nondiscriminatory reason—that Goodall "simply could not perform the essential functions of the Courier or other delivery driver positions given his work restrictions, with or without accommodation." Mot. at 16:1–19. Goodall argues that a factual dispute exists regarding whether DHL placed him on a leave of absence for a

legitimate reason.  Opp. at 13:18–14:8.  DHL further contends that Goodall "has no evidence of pretext."  Mot. at 16:20–17:19.  Goodall counters that he is not required to prove pretext because a factual dispute exists regarding "whether [Goodall's] disability was a motivating factor in the decision to place him on a forced, indefinite leave of absence."  Opp. at 14:9–15:16.

To show pretext, a plaintiff "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination."  *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 966 (2014).  "A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Diego v. City of Los Angeles*, 15 Cal. App. 5th 338, 351 (2017) (cleaned up).

Here, the parties disagree on whether Goodall must prove pretext for this claim.  Goodall is correct that California courts treat disability discrimination different from other types of discrimination.  Opp. at 14:9–15:6.  Under FEHA, an employer incurs liability for disability discrimination "by taking an adverse employment action against an employee 'because of' the employee's physical disability even if the employer harbored no animosity or ill will against the employee or the class of persons with that disability."  *Wallace v. Cnty. of Stanislaus*, 245 Cal. App. 4th 109, 128 (2016).  In other words, a plaintiff can establish the requisite employer intent to discriminate by showing their disability was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action.  *Id.* at 129.  DHL does not quarrel with this caselaw; instead, it argues that *Wallace* is inapposite because DHL placed Goodall on a leave of absence because he "could not perform the essential functions of the Courier position," not "because of his disability."  Reply at 9:7–14.  But that is Goodall's point.  If a jury finds that Goodall could perform the essential functions of his position, the jury could find that Goodall was subjected to an adverse employment action because of his disability, and Goodall would not be required to prove discriminatory animus.  Therefore, the Court agrees with Goodall that he is not required to proffer evidence of pretext to survive summary judgment.

18

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Disability Discrimination claim.

**C.      Disability Harassment Claim (Claim 2)**

Goodall alleges that DHL subjected him to harassment based on his physical disability. Compl. ¶¶ 28–38.  DHL argues that summary judgment in its favor is appropriate on Goodall's Disability Harassment claim because Goodall "did not experience severe or pervasive conduct related to his disability."  Mot. at 20:1–21:7.  Goodall contends that summary judgment is improper because considering "the totality of the circumstances," a factual dispute exists regarding whether DHL's conduct was severe or pervasive.  Opp. at 15:17–16:13.

Under FEHA, it is unlawful for an employer to harass an employee because of an employee's protected characteristic.  Cal. Gov't Code § 12940(j)(1).  Harassment of an employee

> shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. . . . An entity shall take all reasonable steps to prevent harassment from occurring.  Loss of tangible job benefits shall not be necessary in order to establish harassment.

*Id.*  Under FEHA,

> harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being.

*Id.* at § 12923(a).  "A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment."  *Id.* at § 12923(b).

"[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."  *Roby*, 47 Cal. 4th at 706 (emphasis in original).  To prevail on a claim for harassment under FEHA, "an employee must show she was subjected

United States District Court
Northern District of California

19

to harassing conduct that was (1) unwelcome; (2) because of [a protected characteristic]; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Bailey v. San Francisco Dist. Attorney's Off.*, 16 Cal. 5th 611, 627 (2024) (alteration added).   "In addition, she must establish that the offending conduct was imputable to her employer." *Id.*

"Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006).   Whether conduct is "sufficiently severe so as to create a hostile work environment" is a question of fact. *Bailey*, 16 Cal. 5th at 634.   "Harassment cases are rarely appropriate for disposition on summary judgment." Cal. Gov't Code § 12923(e).

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that DHL's conduct was severe or pervasive enough to alter the conditions of Goodall's employment.   It is undisputed that when Goodall sought accommodations, Sedgwick, DHL's third-party administrator regarding return to work issues, told Goodall that his request was "inappropriate." Goodall Decl. ¶ 9, Ex. 2.   And Goodall proffers evidence that Aguilar "misread [his] doctor's note to conclude it applied to both arms, rather than just the left." Opp. at 16:1–13.   Aguilar's March 24, 2024, email states that Goodall's work restrictions include "[a]ble to reach and waist level on an occasional basis"; however, the Nov. 2023 Visit Note states that Goodall "is able to reach at waist level with his left upper extremity on an occasional basis." Aguilar Decl. ¶ 12, Ex. F at 4; Nov. 2023 Visit Note at 10.   In addition, Goodall states that his manager, union representative, and a DHL payroll employee all told him that he must be released to full duties before DHL would permit him to return to work.   Goodall Decl. ¶¶ 4–5, 7; Goodall Dep. Tr. at 65:4–16.   Goodall further states that DHL did not offer him any accommodation, that DHL did not discuss possible tools with him that could get him back to work, and that DHL ceased communications with him after placing him on leave. Sec. Goodall Dep. Tr. at 268:12–270:20; Goodall Decl. ¶ 13.   Viewed in the aggregate, from the perspective of a reasonable person

United States District Court
Northern District of California

20

in Goodall's position, considering all the circumstances, a jury could find that the conduct experienced by Goodall was objectively severe or pervasive. *Lyle*, 38 Cal. 4th at 283.

DHL argues that Goodall's claim fails because he has not demonstrated a "concerted pattern of harassment." Mot. at 20:11–25; *see* Reply at 13:3 ("That single alleged statement is not severe or pervasive harassment."). But that is the wrong standard. The plain language of FEHA makes clear that "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment." Cal. Gov't Code § 12923(b). Moreover, DHL's argument that Goodall did not experience "actionable harassment" because all he complains of is "personnel management activity" is unavailing. Reply at 12:18–27. Goodall proffers evidence demonstrating that DHL refused to work with him to return to work and discouraged him from attempting to return to work with accommodations. These actions cannot constitute "commonly necessary personnel management actions." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65 (1996); *see* Reply at 12:18–27.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Disability Harassment claim.

### D.    Failure To Provide Reasonable Accommodation Claim (Claim 3)

Goodall alleges that DHL failed to provide him a reasonable accommodation for his physical disability. Compl. ¶¶ 39–49. DHL argues that summary judgment in its favor is appropriate on Goodall's Failure to Provide Reasonable Accommodation claim because Goodall "was unable (and is still unable) to perform his essential duties."[4] Mot. at 17:20–19:28. Goodall contends that summary judgment is improper because a factual dispute exists "regarding whether [he] could perform the essential functions of the Courier job with or without restrictions." Opp. at 16:14–18:16.

---

[4] In its Reply, DHL argues for the first time that Goodall's claim fails because he "identifies no available reasonable accommodation." Reply at 9:20–11:26. DHL cannot sandbag Goodall with new arguments raised for the first time in its Reply. *See VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 974–75 (N.D. Cal. 2023) (declining to consider citation to patent's file wrapper raised for first time in reply brief because argument was waived); *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863–63 (N.D. Cal. 2004) (declining to reach arguments raised for the first time in reply brief and noting fairness concerns). The Court therefore declines to reach this argument.

21

Case 3:25-cv-04548-TSH   Document 31   Filed 06/29/26   Page 22 of 32

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

Cal. Gov't Code § 12940(m)(1). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position held or desired, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022) (cleaned up).

"A reasonable accommodation is any modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Id.* at 345 (cleaned up). Whether an accommodation is reasonable is generally a question for the jury. *Id.* at 346.

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that Goodall could perform the essential functions of his position. To be sure, "elimination of an essential function is not a reasonable accommodation." *Nealy*, 234 Cal. App. 4th at 375. However, as discussed, there is a factual dispute regarding whether lifting forty pounds frequently and lifting seventy pounds occasionally—the purported eliminated essential functions—are essential functions. If they were not, then DHL cannot lean on its argument that "because [Goodall] was unable (and is still unable) to perform his essential duties, [he] cannot establish his claim for failure to provide a reasonable accommodation." Mot. at 19:13–15.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Failure to Provide Reasonable Accommodation claim.

**E.      Failure To Engage In Interactive Process Claim (Claim 4)**

Goodall alleges that DHL "failed to properly engage [him] and talk with him about" his physical disability and "intentionally failed to provide him timely documentation and information." Compl. ¶¶ 50–60. DHL argues that summary judgment in its favor is appropriate on Goodall's Failure to Engage in Interactive Process claim because "DHL engaged in the

22

interactive process with [Goodall] at every turn." Mot. at 17:20–19:28. Goodall contends that summary judgment is improper because a factual dispute exists regarding whether DHL properly engaged in the interactive process. Opp. at 18:17–19:10.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

Cal. Gov't Code § 12940(n). "Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability." *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 424 (2007). Once an employee initiates the process, "the employer has *a continuous obligation* to engage in the interactive process in good faith." *Kaur*, 83 Cal. App. 5th at 347 (emphasis in original). Whether an employer is responsible for a breakdown in the interactive process is a question of fact. *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008).

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that DHL did not carry out its obligation to engage in the interactive process with Goodall. DHL argues that it "further engaged in the interactive process when [Goodall] presented his permanent work restrictions in November 2023 and continued to engage in the interactive process with [Goodall] through April 2024." Mot. at 19:20–28. But it is undisputed that Goodall remains on a leave of absence. Def.'s SSF ¶ 31. Yet DHL indicates that the interactive process ended in April 2024. *See* Reply at 12:1–14 ("[Goodall's] disagreement with DHL's conclusion following the interactive process does not mean that the interactive process did not occur and is not evidence of bad faith."). Indeed, there is no evidence that DHL explored the option of having Goodall return to work after its communication with him in April 2024. Goodall Decl. ¶ 13. Nor did DHL revisit whether Goodall could be accommodated in his Courier position after the May 2024 Work Status Report and June 2025 Visit Note clarified that Goodall's lifting restrictions apply only to his left arm. Opp. at 18:17–19:10. Under California

23

law, DHL has a continuous obligation to engage in the interactive process in good faith. *Kaur*, 83 Cal. App. 5th at 347; *see also Nadaf-Rahrov*, 166 Cal. App. 4th at 985 ("[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n)."). So while DHL's actions may satisfy this obligation, they may not—that is a question for the jury. Therefore, summary judgment in DHL's favor is not warranted.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Failure to Engage in Interactive Process claim.

### F. Retaliation Claim (Claim 5)

Goodall alleges that DHL retaliated against him "for seeking a reasonable accommodation" and "for seeking the interactive process." Compl. ¶¶ 61–68. DHL argues that summary judgment in its favor is appropriate on Goodall's Retaliation claim because Goodall cannot establish the *prima facie* elements of his retaliation claim and cannot establish pretext. Mot. at 21:8–26.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted.

Cal. Gov't Code § 12940(m)(2).

California has adopted the three-stage *McDonnell Douglas* burden-shifting test for FEHA retaliation claims. *Yanowitz*, 36 Cal. 4th at 1042 (citing *McDonnell*, 411 U.S. at 802–805). "[T]o establish a *prima facie* case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Id.* (cleaned up). "Once an employee establishes a *prima facie* case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional

United States District Court
Northern District of California

retaliation." *Id.* (cleaned up). "Actions for retaliation are inherently fact-driven; it is the jury, not the court, that is charged with determining the facts." *McCoy v. Pac. Mar. Ass'n*, 216 Cal. App. 4th 283, 299 (2013) (cleaned up).

### 1. *Prima Facie* Case Of Retaliation

DHL argues that Goodall cannot establish a *prima facie* case of retaliation because "he has not faced an adverse employment action." Mot. at 21:8–26. Goodall contends that summary judgment is improper because a factual dispute exists regarding whether his leave of absence is an adverse action. Opp. at 19:11–22.

As with the discrimination provisions, the FEHA retaliation provisions protect employees against adverse action in the form of "compensation or in the terms, conditions, and privileges of employment." *Yanowitz*, 36 Cal. 4th at 1053. To demonstrate a causal link between an adverse action and a protected activity, a plaintiff must show that the protected activity was a "substantial motivating factor" for the employer's action. *Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 483 (2013). "The retaliatory motive is proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 615 (1989).

Here, as discussed, the Court finds that a reasonable jury could find that Goodall suffered an adverse employment action when DHL placed him on an unpaid involuntary leave of absence. *See supra*, Part IV.B.1.b. Therefore, the Court finds that Goodall establishes a *prima facie* case of retaliation under FEHA.

### 2. Pretext

DHL asserts that its actions are based on a legitimate nondiscriminatory reason—"not having an available position within [Goodall's] work restrictions." Mot. at 21:8–26. Goodall argues that a factual dispute exists regarding whether DHL placed him on a leave of absence for a legitimate reason. Opp. at 19:24–20:1.

To show pretext, "the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

United States District Court
Northern District of California

25

its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jumaane v. City of Los Angeles*, 241 Cal. App. 4th 1390, 1409 (2015) (emphasis in original) (cleaned up).

Here, construing all evidence in the light most favorable to Goodall, the Court finds that a reasonable jury could find that DHL's actions were based on a discriminatory motive. First, if a jury finds that lifting forty pounds frequently and lifting seventy pounds occasionally are not essential functions, then a jury could find that DHL's asserted legitimate reason is false. This alone could permit a jury to find for Goodall. *Id.* Second, Goodall proffers other evidence of pretext: three persons associated with DHL told Goodall he would have to be released to full duties to return to work; Aguilar misstated Goodall's work restrictions; DHL denied Goodall's request for an accommodation even though it did not clarify his work restrictions; and DHL stopped communicating with Goodall about accommodations even though he remains on leave. Opp. at 10:12–21, 11:19–22; 19:11–22; *see supra*, Part IV.C. It is undisputed that Goodall had no performance issues while working at DHL. Pl.'s SSF ¶ 9; Def.'s RSF ¶ 9. Further, Goodall states that he can perform all duties in his Courier position using his right arm, and that he found several options for potential accommodations that would allow him to perform the lifting requirements. Sec. Goodall Dep. Tr. at 210:11–15, 266:4–268:8; Goodall Decl. ¶ 15, Ex. 3. Contrary to DHL's assertion, Goodall puts forward "pretextual evidence other than his pure speculation." Reply at 13:7–20. Overall, Goodall's evidence creates a factual dispute regarding whether DHL required Goodall to return to work without accommodations for the purported lifting requirements, in contravention of FEHA. Opp. at 15:7–16. Because the Court cannot resolve this question of fact, summary judgment in DHL's favor is not warranted.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Retaliation claim.

**G.    Failure To Prevent And Remedy Discrimination, Harassment, And Retaliation (Claim 6)**

Goodall alleges that DHL "failed to take all reasonable steps to prevent discrimination, harassment and retaliation from occurring in the workplace" and "failed to remedy and investigate

26

discrimination, harassment and retaliation based on [Goodall's] disabilities and engagement in protected activity." Compl. ¶¶ 69–76. DHL argues that summary judgment in its favor is appropriate on Goodall's Failure to Prevent and Remedy claim because his derivative discrimination, harassment, and retaliation claims fail. Mot. at 22:1–23:2. Goodall contends that summary judgment is improper because factual disputes exist regarding these underlying claims. Opp. at 20:2–21:1.

Under FEHA, it is unlawful

> [f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

Cal. Gov't Code § 12940(k).

Here, the parties agree that Claim 6 rises and falls with the underlying FEHA violations. Mot. at 22:1–23:2; Opp. at 20:2–21:1. The Court agrees and finds that because Goodall's discrimination, harassment, and retaliation claims survive, so too does his failure to prevent discrimination, harassment, and retaliation claim. *Contra Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89 (1998) ("We do not believe the statutory language supports recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiff's workplace."). Therefore, summary judgment in DHL's favor is not warranted.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Failure to Prevent and Remedy claim.

**H.     Whistleblower Retaliation Claim (Claim 7)**

Goodall alleges that he was harmed by whistleblowing activities because DHL constructively terminated him after he complained to DHL that he believed they were violating FEHA. Compl. ¶¶ 77–88. DHL argues that summary judgment in its favor is appropriate on Goodall's Whistleblower Retaliation claim because Goodall "has not faced an adverse

United States District Court
Northern District of California

27

employment action."[5]  Mot. at 21:8–26; Reply at 13:12–18.  Goodall contends that summary judgment is improper because a factual dispute exists regarding whether his leave of absence is an adverse action.  Opp. at 21:2–23.

Under California law, it is unlawful for an employer to retaliate against an employee for engaging in protected activity under the Labor Code.  *See* Cal. Lab. Code § 98.6(a) ("A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter[.]").  Labor Code section 1102.5

> provides whistleblower protections to employees who disclose wrongdoing to authorities.  As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or federal statute' or of 'a local, state, or federal rule or regulation' with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation.

*Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022) (citing Cal. Lab. Code § 1102.5(b)) (ellipsis in original).  "An employee engages in activity protected by the statute when the employee discloses reasonably based suspicions of illegal activity."  *Ross v. Cnty. of Riverside*, 36 Cal. App. 5th 580, 592 (2019) (cleaned up).  While an employee need "not expressly state in his disclosures that he believed the [employer] was violating or not complying with a specific state or federal law," the employee must "disclose information and [must] reasonably believe the information discloses unlawful activity."  *Id.* at 592–93 (alterations added).

Here, as discussed, the Court finds that a reasonable jury could find that Goodall suffered an adverse employment action when DHL placed him on an unpaid involuntary leave of absence.  *See supra*, Part IV.B.1.b.

Accordingly, the Court **DENIES** DHL's Motion for Summary Judgment on Goodall's Whistleblower Retaliation claim.

---

[5] In its Reply, DHL argues for the first time that this claim fails because Goodall "had not complained about discrimination or harassment prior to filing this action."  Reply at 13:7–20.  The Court declines to reach this argument.

United States District Court
Northern District of California

**I.      Constructive Wrongful Termination (Claim 8)**

Goodall alleges that DHL constructively terminated his employment based on his medical condition.  Compl. ¶¶ 89–93.  DHL argues that summary judgment in its favor is appropriate on Goodall's Constructive Wrongful Termination claim because (1) his underlying FEHA claims fail; and (2) he has not resigned from DHL.  Mot. at 22:1–23:2.  Goodall contends that summary judgment is improper because factual disputes exist regarding whether DHL's conduct violated the public policy encompassed by FEHA.  Opp. at 21:24–22:14.

California courts

> have created an exception to, or qualification of, the at will employment principle.  The exception is this:  An employer may not discharge an at will employee for a reason that violates fundamental public policy.  This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy.

*Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 887 (1997).  "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign"; thus, it "is legally regarded as a firing rather than a resignation."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1245 (1994). To establish a constructive discharge, an employee must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign."  *Id.* at 1251.

Here, the Court finds that the undisputed evidence shows that Goodall cannot demonstrate that he resigned from his Courier position at DHL.  Goodall testified that he has not resigned from DHL since being placed on a leave of absence.  Goodall Dep. Tr. at 54:20–55:1.  And Goodall does not dispute that his claim requires that he resigned from his employment.  Reply at 14:1–8; *see* Opp. at 21:24–22:14.  Therefore, because Goodall cannot prove that DHL's conduct effectively forced him to resign, an essential element of his Constructive Wrongful Termination claim, summary judgment for DHL is warranted.  *Turner*, 7 Cal. 4th at 1245.

Accordingly, the Court **GRANTS** DHL's Motion for Summary Judgment on Goodall's Constructive Wrongful Termination claim.

**J.      Claim For Punitive Damages**

Goodall alleges that DHL committed unlawful acts "maliciously, fraudulently, and oppressively in conscious disregard for [his] rights," and such acts "were allowed to proceed by officers, directors, and/or managing agents of [DHL]." Compl. ¶¶ 22, 34, 46, 57, 65, 73, 88, 93. DHL argues that summary judgment in its favor is appropriate on Goodall's claim for punitive damages because Goodall (1) "cannot establish the requisite showing of severe conduct"; and (2) has no "evidence that the decisionmaker was a director, officer, or managing agent of DHL." Mot. at 23:3–25:2. Goodall contends that a factual dispute exists regarding "whether Kelly Aguilar is a managing agent." Opp. at 23:11–24:10.

Under California law, in a tort action,

> where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civil Code § 3294(a). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* at § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. *Id.* at § 3294(c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* at § 3294(c)(3).

Further,

> [a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

30

*Id.* at § 3294(b). "In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999). The California Supreme Court explained:

> principal liability for punitive damages [does] not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees.

*Id.*

Here, the Court finds that the undisputed evidence shows that Goodall cannot demonstrate that any conduct was committed by an officer, director, or managing agent of DHL. DHL argues that there is no evidence showing "that the participant in the underlying decision, Senior Human Resources Manager, Kelly Aguilar, was a corporate director or officer of DHL." Mot. at 24:17–26. The Court agrees. Goodall asserts that because Aguilar's Declaration "contains omissions" that "will be brought out at trial during cross-examination," a factual dispute exists regarding whether "Aguilar is a managing agent." Opp. at 23:11–24:10. But that is not how summary judgment works. Because DHL meets its initial burden in showing that an absence of evidence exists regarding Aguilar's status as a managing agent, Goodall must proffer specific evidence showing that Aguilar is a managing agent. *Anderson*, 477 U.S. at 250. This Goodall fails to do. *See* Opp. at 22:15–24:10; Reply at 14:17–18:6. As such, Goodall confirms there is no evidence showing that Aguilar possessed "discretionary authority over decisions that ultimately determine corporate policy." *White*, 21 Cal. 4th at 577. Therefore, because Goodall cannot prove that the conduct he complains of was committed by a managing agent of DHL, an essential element of his claim for punitive damages, summary judgment for DHL is warranted. *Id.*

Accordingly, the Court **GRANTS** DHL's Motion for Summary Judgment on Goodall's claim for punitive damages.

United States District Court
Northern District of California

United States District Court
Northern District of California

## V.     CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** DHL's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: June 29, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge